# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD,

     Plaintiff,

     v.

FEDERAL BUREAU OF
INVESTIGATION, *et al*.,

     Defendants.

Case No. 22-cv-1921-BAH

**PLAINTIFF'S MEMORANDUM**
**IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................3

III.  LEGAL STANDARD ........................................................................................5

IV.   ARGUMENT .....................................................................................................6

   A.  The Exemption 7(A) *Glomar* response is invalid ..........................................6

      1.  The FBI fails to account for Trump's possible immunity, which would
          preclude the documents from being compiled in relation to a reasonably
          anticipated prosecution ......................................................................7

      2.  The FBI fails to show interference with enforcement proceedings ........10

   B.  The FBI fails to show that disclosing any responsive part of the Mar-a-Lago
       investigative file would interfere with enforcement proceedings ...............14

   C.  The FBI conducted an inadequate search by limiting its search terms to the main
       Trump investigative file .........................................................................17

V.    CONCLUSION ...............................................................................................19

# **TABLE OF AUTHORITIES**

*Page*

*Cases*

*ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2013)..................................................................6

*Am. Oversight v. HHS*, 101 F.4th 909 (D.C. Cir. 2024) ...............................................17

*Bartko v. DOJ*, 898 F.3d 51 (D.C. Cir. 2018)................................................................7

*Bevis v. Dep't of State*, 801 F.2d 1386 (D.C. Cir. 1986) .............................................15

*Campbell v. HHS*, 682 F.2d 256 (D.C. Cir. 1982)........................................................13

*Citizens for Resp. & Ethics in Washington v. DOJ*, 746 F.3d 1082 (D.C. Cir. 2014)..................14

*Fogg v. IRS*, 106 F.4th 779 (8th Cir. 2024) ...........................................................6, 13

*Hall & Assocs. v. EPA*, 956 F.3d 621 (D.C. Cir. 2020)..................................................5

*Inst. for Just. v. IRS*, 941 F.3d 567 (D.C. Cir. 2019) ..................................................15

*Keys v. DOJ*, 830 F.2d 337 (D.C. Cir. 1987)..............................................................6

*Leopold v. DOJ*, 94 F.4th 33 (D.C. Cir. 2024) ...............................................5, 6, 13, 14

*Leopold v. DOJ*, No. 17-2819, 2022 WL 4598596 (D.D.C. Sept. 30, 2022) ................7

*Mapother v. DOJ*, 3 F.3d 1533 (D.C. Cir. 1993)........................................................6, 7

*Nieves v. Bartlett*, 587 U.S. 391 (2019) ......................................................................8

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978)............................................1

*Oglesby v. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990)..............................................17

*People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535 (D.C. Cir. 2014) ...................9

*Prison Legal News v. Samuels*, 787 F.3d 1142 (D.C. Cir. 2015) ..................................15

*Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021)........................13, 14

*Seife v. FDA*, 43 F.4th 231 (2d Cir. 2022) ..................................................................13

*Truitt v. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990)..................................................5

*Trump v. U.S.*, 144 S. Ct. 2312 (2024) ...................................................................7, 8

*U.S. v. Trump*, No. 23-cr-80101, 2024 WL 3404555 (S.D. Fla. July 15, 2024)...........................4

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) ..........................5

**Statutes**

5 U.S.C. § 552(a)(4)(B) ......................................................................................5

5 U.S.C. § 552(b) ............................................................................................15

18 U.S.C. § 3282 ............................................................................................12

**Other Authorities**

28 C.F.R. § 600.4(a) .........................................................................................11

Affidavit in Support of an Application Under Rule 41 for a Warrant to Search and Seize
*In Re Sealed Search Warrant*, No. 22-MJ-8332 (Aug. 5, 2022) .........................................3

David French, Trump's Misconduct Was Too Brazen Not to Charge, *N.Y. Times*
(June 9, 2023)..................................................................................................1

Fed. R. Civ. P. 56(a) .........................................................................................5

Former President Trump calls federal probe of handling of sensitive documents a
"witch hunt," *CBS News Miami* (June 12, 2023) ..........................................................1

Heather Schwedel, A Plumber Has a Simple Message for Donald Trump About Flushing
Sensitive Documents Down the Toilet, *Slate* (Feb. 11, 2022)..........................................3

Indictment, *U.S. v. Trump*, No. 23-cr-80101 (S.D. Fla. June 8, 2023) ..............................4, 16

Letter from David S. Ferriero, Archivist of the United States, to the Hon. Carolyn B.
Maloney (Feb. 18, 2022).....................................................................................3

Letter from Debra Steidel Wall, Acting Archivist of the United States, to Evan Corcoran
(May 10, 2022)................................................................................................3

Mike Allen, "Exclusive photos: Trump's telltale toilet (Aug. 8, 2022) ...............................3

Mike Allen, Haberman book: Flushed papers found clogging Trump WH Toilet, *Axios*
(Feb. 10, 2022)...............................................................................................3

Order Directing Public Docketing of Outstanding Undocketed Pre-trial Motions and
Resolving Related Motions at 4-5, *U.S. v. Trump*, No. 23-cr-80101
(S.D. Fla. May 19, 2024) ............................................................................................17

Order No. 5559-2022: Appointment of John L. Smith as Special Counsel (Nov. 18, 2022) ........11

Shania Shelton, Photos show handwritten notes that Trump apparently ripped up and
attempted to flush down toilet, CNN (Aug. 8, 2022)......................................................................3

Superseding Indictment, *U.S. v. Trump*, No. 23-cr-80101 (S.D. Fla. July 27, 2023)....................4

## I.    INTRODUCTION

The government is investigating and prosecuting a former President.  The gravity of that choice is hard to overstate.  And it has engendered massive controversy.  People have described the government's actions as ranging from a politically motivated "witch hunt"[1] to the only way to avoid "plac[ing] presidents outside the rule of federal law."[2]

Illuminating the government's use of the criminal process against a former President is a posterchild for why we have the Freedom of Information Act: "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, 242 (1978).  To further this mission, veteran investigative reporter Jason Leopold filed a FOIA request with the FBI for records related to two investigations it might have conducted: an investigation into the destruction of presidential records at the Trump White House and one into Trump's retention of other presidential records at his Mar-a-Lago residence after he left office.

The FBI responded with secrecy—exactly the kind of secrecy that undermines confidence in federal law enforcement and allows conspiracy theories to flourish.  After conducting a partial search, it issued a *Glomar* response refusing to confirm or deny if it possesses records of an investigation into White House document destruction and categorically withheld responsive records in the Mar-a-Lago investigative file—both under FOIA Exemption 7(A).  The *Glomar* response, the categorical withholding, and the search were all unlawful.[3]

---

[1] Former President Trump calls federal probe of handling of sensitive documents a "witch hunt," *CBS News Miami* (June 12, 2023), https://www.cbsnews.com/miami/news/former-president-donald-trump-federal-probe-handling-sensitive-documents-witch-hunt/.

[2] David French, Trump's Misconduct Was Too Brazen Not to Charge, *N.Y. Times* (June 9, 2023), https://www.nytimes.com/2023/06/09/opinion/trump-indictment-evidence.html.

[3] The FBI has also redacted or withheld records outside the investigative file.  Leopold is not challenging that decision.

Exemption 7(A), which underlies the *Glomar* response, applies only if the FBI would have compiled responsive documents in anticipation of a reasonably prospective prosecution. But the FBI has failed to account for the possibility that former President Trump is immune from prosecution for the disposition of his own presidential records while in office, thus negating any prospective prosecution and wiping out any Exemption 7(A) claim. Further, it was widely reported years ago that Trump flushed presidential records down the White House toilet, undermining the FBI's claimed harm to a hypothetical investigation—particularly since acknowledging the existence of responsive records would say nothing about the scope or timing of that investigation, or whether it continues today. Put simply, if former President Trump was inclined to destroy evidence or otherwise interfere with an investigation into whether he flushed presidential records down the toilet, it was obvious to him years ago that the FBI, like the rest of the world, was already aware of those allegations. The FBI also fails to satisfy FOIA's foreseeable harm requirement, which augments the required showing under Exemption 7(A) and prohibits the kind of generalized hypothetical harms to investigations that FBI cites.

The agency's categorical withholding under Exemption 7(A) is equally off-base. While parts of the file may be exempt, the Special Counsel has published a massive amount of investigative information, belying the notion that disclosing even a segregable iota would harm the ongoing investigation and prosecution. The Special Counsel has also produced over a million pages of documents to former President Trump in discovery, blunting any harm that might otherwise result from disclosure.

Last, the FBI failed to conduct an adequate search. Leopold sought records of people associated with the investigation, while the FBI limited the request to the investigation's targets. It had no ground to do so.

The Court should grant summary judgment to Leopold and order the FBI to (1) lift its *Glomar* response, (2) justify its withholding of the investigative file on a document-by-document basis, and (3) conduct a new and adequate search.

## II.    BACKGROUND

In February 2022, two sets of disturbing allegations surfaced about former President Trump's treatment of presidential records.   First, Axios reported on an upcoming book by *New York Times* White House correspondent Maggie Haberman claiming that then-President Trump flushed presidential records down the toilet.[4]   Haberman later released photos of notes at the bottom of two toilets.  According to her White House sources, one photo was of a White House toilet while the other toilet was overseas.[5]  Haberman's reporting went viral.[6]

Second, the public learned that Trump allegedly brought presidential records—some classified—to his personal residence at Mar-a-Lago when he left the presidency.  He eventually delivered some records to the National Archives, but not all of them.[7]  That led the FBI to search Mar-a-Lago in August 2022, where it discovered more records.  The Attorney General appointed Special Counsel Jack Smith to oversee the ensuing investigation, which led to the indictment of

---

[4] *See* Mike Allen, Haberman book: Flushed papers found clogging Trump WH Toilet, *Axios* (Feb. 10, 2022), https://www.axios.com/2022/02/10/maggie-haberman-book-trump-papers.

[5]  *See* Mike Allen, "Exclusive photos: Trump's telltale toilet (Aug. 8, 2022), https://www.axios.com/2022/08/08/trump-toilet-photos-maggie-haberman.

[6] *See, e.g.*, Heather Schwedel, A Plumber Has a Simple Message for Donald Trump About Flushing Sensitive Documents Down the Toilet, *Slate* (Feb. 11, 2022), https://slate.com/human-interest/2022/02/donald-trump-flushing-documents-toilet-plumber-interview.html;          Shania Shelton, Photos show handwritten notes that Trump apparently ripped up and attempted to flush down toilet, CNN (Aug. 8, 2022), https://www.cnn.com/2022/08/08/politics/trump-white-house-notes-toilet-photos-cnntv/index.html.

[7] *See* Letter from David S. Ferriero, Archivist of the United States, to the Hon. Carolyn B. Maloney at 1 (Feb. 18, 2022), https://perma.cc/SHJ5-H7FP; Letter from Debra Steidel Wall, Acting Archivist of the United States, to Evan Corcoran at 1 (May 10, 2022), https://perma.cc/B5QJ-24V7; Affidavit in Support of an Application Under Rule 41 for a Warrant to Search and Seize ¶ 3 *In Re Sealed Search Warrant*, No. 22-MJ-8332 (Aug. 5, 2022), ECF No. 125.

Trump and his aide, Waltine Nauta, in the District Court for the Southern District of Florida for unlawfully retaining the records and obstructing justice; a superseding indictment later added a third defendant, Carlos de Oliveira.  *See generally* Indictment, *U.S. v. Trump*, No. 23-cr-80101 (S.D. Fla. June 8, 2023), ECF No. 3 ("Indictment"); Superseding Indictment, *U.S. v. Trump*, No. 23-cr-80101 (S.D. Fla. July 27, 2023), ECF No. 85.  The court dismissed the superseding indictment for violating the Constitution's Appointments Clause, and the Special Counsel's appeal is before the Eleventh Circuit.  *See U.S. v. Trump*, No. 23-cr-80101, 2024 WL 3404555, at *1 (S.D. Fla. July 15, 2024).  The case has been hotly contested, and as described in more detail below, the Special Counsel has released substantial investigative material in public court filings.

While these allegations were coming to light, Leopold filed a February 22, 2022 FOIA request with the FBI.  Hammer Decl. ¶ 6, ECF No. 31-6; Hammer Decl. Ex. A, ECF No. 31-7.  The request sought, among other things, documents referring to presidential records that were allegedly destroyed at the Trump White House or flushed down the toilet, documents referring to presidential records stored at Mar-a-Lago, "cross reference files" from the FBI's Central Records System referring to the same, and various forms, including FD-302 forms, used in the investigation.  Hammer Decl. Ex. A.

The FBI issued a *Glomar* response to the whole request under FOIA Exemptions 7(A) and 7(E).  Hammer Decl. Ex. C, ECF No. 31-9.  Leopold timely appealed the *Glomar* response to the Department of Justice Office of Information Policy and filed suit after the agency failed to adjudicate the appeal within FOIA's 20 business-day deadline.  Hammer Decl. Ex. D, ECF No. 31-10; Leopold Decl. ¶ 8.

After Leopold sued, the government officially acknowledged its investigation into Trump for unlawfully retaining presidential records.   So the FBI lifted the *Glomar* response as to that

aspect of the request while maintaining the *Glomar* response under Exemption 7(A) for records related to the destruction and flushing of records down the toilet. Hammer Decl. ¶ 14. It then conducted a search and processed two sets of documents. The first are records in the Mar-a-Lago investigative file, which it categorically withheld under Exemption 7(A) after the Court granted its unopposed motion to bifurcate its review to that exemption. *See* Minute Order (July 11, 2023). The second are other responsive records outside the file. Hammer Decl. ¶¶ 41-45. Leopold is not challenging the second set of documents.

### III.    LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Conversely, it must deny summary judgment "if any reasonable view of the record would permit resolution of a factual dispute in favor of the non-movant, and that fact is material to the outcome." *Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020).

The agency bears the sole burden to withhold a record under FOIA. *See* 5 U.S.C. § 552(a)(4)(B). When the agency withholds a record under an exemption other than Exemption 3, it must meet the "distinct, consecutive" burdens of showing that the record is exempt and that disclosure would foreseeably harm an interest protected by the exemption. *Leopold v. DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024). The Court reviews the agency's withholding decision *de novo*. *See* 5 U.S.C. § 552(a)(4)(B). And to justify its search, the agency must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).

### IV.    ARGUMENT

**A.    The Exemption 7(A) *Glomar* response is invalid.**

Citing Exemption 7(A), the FBI has issued a *Glomar* response refusing to confirm or deny if it possesses documents referring to the destruction or toilet flushing of presidential records from the Trump White House.  As with all Exemption 7 claims, the agency must establish both the "threshold law enforcement purpose" and a further "specified harm."  *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987).  Exemption 7(A)'s specified harm requires that disclosing the records "(1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated."  *Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).  As augmented by the foreseeable harm requirement, moreover, the agency may not withhold records solely based on a harm that "could reasonably be expected to" occur.  Instead, like all exemptions other than Exemption 3, an agency asserting Exemption 7(A) must show that disclosure will "actually impede the interests protected by a FOIA exemption," *Leopold*, 94 F.4th at 37 (cleaned up), which for Exemption 7(A) is the actual interference with enforcement proceedings.  *See Fogg v. IRS*, 106 F.4th 779, 788 (8th Cir. 2024) (holding that the foreseeable harm requirement's "would" standard applies to records withheld under Exemption 7(E)).

*Glomar* responses, which the FBI has issued here, differ from ordinary denials, where the agency acknowledges the existence of the record but declines to disclose them.  But ordinary FOIA principles apply to *Glomar* responses, and courts assessing them use the "general exemption review standards established in non-*Glomar* cases."  *ACLU v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013).  They apply those standards to the fact of the record's existence rather than to the record's contents.  *See id*.

Thus, *Glomar* responses under Exemption 7(A) require the agency to make its ordinary two-part showing as applied to the existence of a record.  It must establish that any records the

agency might possess would have been compiled for law enforcement purposes. *See Bartko v. DOJ*, 898 F.3d 51, 66 (D.C. Cir. 2018) (rejecting Exemption 7(C) *Glomar* response because agency failed to show that any responsive records would have been compiled for law enforcement purposes). And the agency must also show that disclosing the record's existence could reasonably be expected to interfere with a reasonably anticipated enforcement proceeding (under the exemption), and that disclosure **would** interfere (under the foreseeable harm requirement). *See Leopold v. DOJ*, No. 17-2819, 2022 WL 4598596, at *9 (D.D.C. Sept. 30, 2022) (rejecting *Glomar* response because agency failed to make required showing of interference). The FBI flunks its burden for two reasons.

> **1.    The FBI fails to account for Trump's possible immunity, which would preclude the documents from being compiled in relation to a reasonably anticipated prosecution.**

First, the FBI has failed to account for then-President Trump's possible immunity from prosecution for destroying presidential records and flushing them down the toilet. If Trump enjoys such immunity, destruction-related investigatory records cannot have been compiled for law enforcement purposes. After all, being compiled for these purposes requires a nexus not to any investigation, but only one "which focus[es] directly on specifically alleged illegal acts … which could, if proved, result in civil or criminal sanctions"—sanctions from which Trump would by definition be immune. *Bartko*, 898 F.3d at 64 (citation omitted).

Trump's immunity would also preclude a "reasonably anticipated" enforcement proceeding. *Mapother*, 3 F.3d at 1540. Immunity does not bar just a person's conviction, but the institution of enforcement proceedings at all. *See Trump v. U.S.*, 144 S. Ct. 2312, 2340 (2024) ("Presidents therefore cannot be indicted based on conduct for which they are immune from prosecution."). And because this immunity emanates from the Constitution, which Justice Department attorneys swear to uphold and are presumed to follow, there can be no "reasonably

anticipated" enforcement proceeding for immune acts.  *See id.* at 2327 (holding that immunity derives from "our constitutional structure of separated powers"); *Nieves v. Bartlett*, 587 U.S. 391, 400 (2019) (holding that prosecutors' charging decisions are subject to presumption of regularity).

Because the FBI, not Leopold, bears the burden to establish the exemption, and has done nothing to meet it, Leopold need not at this juncture plumb the depths of Trump's possible immunity.  But such immunity is at least plausible, and the FBI has failed to account for it.[8]

A President's immunity applies only to official acts, which include all actions "so long as they are not manifestly or palpably beyond his authority," *Trump*, 144 S. Ct. at 2333 (cleaned up), and regardless of whether they "allegedly violate[] a generally applicable law," *id*. at 2334.  A President's disposition of his own records at least plausibly qualifies as official.

As to the scope of immunity, a President is absolutely immune for official acts taken within his "conclusive and preclusive" constitutional authority, and either absolutely or presumptively immune—the Supreme Court has not decided which—for all other official acts.  *See id*. at 2327-28.  Here, even assuming *arguendo* that the President's "conclusive and preclusive" authority excludes the disposition of his own records, and that mere presumptive immunity applies, the government may prosecute Trump only if it "can show that applying a criminal prohibition to that act would pose no dangers of intrusion on the authority and functions of the Executive Branch." *Id*. at 2331-32 (citation omitted).  And it is at least plausible that precluding a President from disposing of his records as he sees fit ***would*** intrude on Executive Branch functions and authority. Thus, since it is at least plausible that Trump is immune from prosecution for flushing presidential

---

[8] While it may seem intuitively strange that a President should be able to destroy records with impunity, that is no less strange than immunity for taking bribes in exchange for pardons or ordering the military to execute a political coup, which three Justices have argued is the implication of the Court's ruling.  *See Trump*, 144 S. Ct. at 2371 (Sotomayor, J., dissenting).

records down the toilet or otherwise destroying them, the FBI has shown neither a threshold law enforcement purpose nor a reasonably anticipated enforcement proceeding related to Trump's destroying records or flushing them down the toilet.

To be sure, this argument does not apply to the possible investigation of people other than Trump, who would enjoy no similar immunity but whose investigations by the FBI arguably fall under the plain terms of the request. Yet the proper approach was not to issue a *Glomar* response for records of both Trump and others. Instead, the FBI should have confirmed or denied whether it possesses records related to Trump while maintaining the *Glomar* response for the others (assuming that response is otherwise valid, which it is not, *see* Section IV.A.2, *infra*). The D.C. Circuit held just that in *People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535 (D.C. Cir. 2014) ("*PETA*"). There the requester sought records "related to all National Institutes of Health (NIH) investigations into complaints" regarding three specific university researchers. *Id.* at 539. The agency issued a *Glomar* response. *See id.* at 540. The court construed the request to seek records of investigations into both the researchers and other persons, such as the university they worked for. *See id.* at 544. It then held the *Glomar* response valid as to the researchers but not the others, and thus ordered the agency to confirm or deny if it possessed investigatory records for persons other than the researchers. *See id.* at 545 ("Because there exists a category of responsive documents for which a *Glomar* response would be unwarranted, NIH's assertion of a blanket *Glomar* response to the … request cannot be sustained."). And it did so even though the request did not expressly distinguish between researcher- and non-researcher-related investigations.

*PETA*'s rationale applies here. The FBI cannot ignore Trump's possible immunity simply because Leopold's request includes other people too. The agency at least should have disclosed

whether it possesses records of an investigation into Trump for flushing presidential records down the toilet or otherwise destroying them.[9]  Its *Glomar* response is thus invalid.

### 2.    The FBI fails to show interference with enforcement proceedings.

If ordered to lift its *Glomar* response, the FBI will have to say if it possesses documents referring to presidential records flushed down the Trump White House toilet.  According to the FBI, that would involve acknowledging whether it investigated that conduct, which it says could harm that investigation.  Its argument fails for three reasons.

First, the FBI's asserted harms are based on a false premise about the connection between any destruction-related records and the Special Counsel's investigation.  The FBI evidently assumes that disclosing the existence or nonexistence of an investigation into conduct in the White House water closet during Trump's presidency would reveal what the Special Counsel has investigated about Trump's and others' actions at Mar-a-Lago after Trump left the White House.  After all, the FBI claims to have reached its harm conclusion after "consultation with Special Counsel Smith's office," Hammer Decl. ¶ 154, and asserts possible harm to "its ongoing

---

[9] *PETA*'s is the only sensible approach.  Had the requester sought the same records in two distinct parts, or via two separate requests—one for the researchers, one for others—there is no question that the agency would have been required to confirm or deny the non-researcher-related records.  Thus, a contrary result would have led to a new non-researcher-related FOIA request and a lawsuit, which would unnecessarily burden the agency and the courts.  So too here.  If the Court upholds the *Glomar* response because the request includes targets other than Trump, who are not plausibly immune from prosecution, then the following events are virtually preordained: Leopold will file a Trump-only request, the FBI will issue a *Glomar* response, Leopold will sue, and the Court will have to decide the issue anyway.  Notably, the FBI has already signaled that it would not lift its *Glomar* response if the request were limited to Trump.  After the Supreme Court decided *Trump v. United States*, Leopold made an offer through counsel to the FBI: Leopold would limit this part of the request to Trump himself if the FBI would lift its *Glomar* response as to Trump.  He made that offer in part to avoid having to broach the immunity issue in connection with a FOIA action.  But the FBI refused.  *See* Leopold Decl. ¶¶ 9-10.  Given the agency's position, the Court will need to confront the issue one way or another unless it rejects the *Glomar* response on other grounds.

investigation," *id*.  "Its ongoing investigation" presumably refers to the Mar-a-Lago investigation, which is the only active investigation referenced in the FBI's declaration.

But the existence or nonexistence of an investigation into White House document destruction and toilet flushing will reveal nothing about the Special Counsel's Mar-a-Lago investigation.  That is because the two are unrelated.  Special Counsel Smith has no apparent jurisdiction to investigate allegations of document destruction and toilet flushing at the Trump White House.  The Attorney General authorized him to investigate and prosecute conduct "referenced and described in the United States' Response to Motion for Judicial Oversight and Additional Relief, *Donald J Trump v. United States*, No. 9:22-CV-81294-AMC (S.D. Fla. Aug. 30, 2022) (ECF No. 48 at 5- 13)."  Order No. 5559-2022: Appointment of John L. Smith as Special Counsel, ¶ (c) (Nov. 18, 2022), https://www.justice.gov/opa/file/1553901/dl.[10]  The Response to Motion for Judicial Oversight and Additional Relief, in turn, discusses allegations concerning the documents Trump brought to Mar-a-Lago after his presidency ended and efforts to obstruct the FBI's investigation into the removal of presidential records.  *See* Response to Motion for Judicial Oversight and Additional Relief at 5-13 *Donald J Trump v. United States*, No. 9:22-CV-81294-AMC (S.D. Fla. Aug. 30, 2022), ECF No. 48.  It says nothing about documents Trump or others might have destroyed or flushed down the White House toilet.  Nor could it.  All the facts discussed in the government's filing concern Trump's alleged ***retention*** of presidential records at Mar-a-Lago and his alleged lies to federal investigators about the documents he still possessed.  That has nothing to do with what documents he or others might have ***destroyed*** during his presidency.

---

[10] It also authorizes the special counsel to investigate "any matters that arose or may arise directly from this investigation or that are within the scope of 28 C.F.R. § 600.4(a)."  *Id*.  This appears to refer to possible crimes flowing from the authorized investigation itself, such as obstruction of that investigation, but not crimes relating to separate events.  *See* 28 C.F.R. § 600.4(a).

In short, because any destruction or toilet flushing investigation would be unrelated to the Special Counsel's investigation, disclosing the existence or nonexistence of the former would shed no light on the latter. The FBI's claimed harm fails from the start.

Second, the passage of time vitiates the FBI's claim to harm. Haberman's reporting has been public for close to three years. *See* Section II *supra*. And because any White House document destruction or toilet flushing occurred before Trump left the White House in January 2021, we are already past or near the five-year statute of limitations for crimes plausibly applicable here, such as 18 U.S.C. § 641 and 18 U.S.C. § 2071. *See* 18 U.S.C. § 3282 (providing for default five-year limitations period for non-capital offenses). So if the FBI acknowledges that it **has** responsive records, that would merely indicate that at some point in the last few years it looked into highly publicized possible criminal conduct by the same former President the government has already twice indicted. That would surprise no one, including potential criminals. And revealing the existence of responsive records would not disclose whether the investigation remains open. Meanwhile, if the FBI acknowledges that it **lacks** responsive records, then it is hard to see any possible harm to an investigation. After all, if the FBI were going to open an investigation into toilet flushing, then the limitations period would have virtually compelled it to do so by now.

Third, the FBI's claims to harm are too speculative and boilerplate to withstand scrutiny under either the foreseeable harm requirement or Exemption 7(A) itself. For one, the FBI's declaration mostly speculates about what "could" or "might" occur. *See, e.g.*, Hammer Decl. ¶ 154 (claiming that "acknowledging [the records'] existence prematurely **could reasonably be expected** to hamper prosecutorial efforts by exposing potential witness or sources to harassment, intimidation, coercion, physical threats or actual harm") (emphasis added); *id*. ¶ 161 (stating that lifting the *Glomar* response "**could reasonably be expected** to hamper and interfere with the

pending investigation" because doing so "***might*** lead persons of interest to alter their testimony; destroy, adulterate, or fabricate evidence; or refuse to cooperate with the government altogether") (emphases added); *id*. (arguing that lifting the *Glomar* response would provide bad actors more information, which "***reasonably could be expected*** to severely hamper the FBI's ability to investigate and assist in the prosecution of potential crimes") (emphasis added).

Whether or not such speculation is sufficient to satisfy Exemption 7(A), it is not enough for foreseeable harm.  To meet that independent requirement, the agency must establish that disclosure "'would'—not 'could'" cause the harm protected by the exemption.  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021).  And while no appellate court has considered foreseeable harm in connection with Exemption 7(A) specifically, every appellate foreseeable harm decision has applied the same "would" standard regardless of exemption, including other subsections of Exemption 7.  *See Seife v. FDA*, 43 F.4th 231, 239 (2d Cir. 2022) (holding agency must show that "disclosure would result in foreseeable harm to an interest protected by Exemption 4"); *Leopold*, 94 F.4th at 38 (vacating summary judgment decision on Exemption 8 foreseeable harm because agency failed to "explain how that harm would result from disclosure"); *Fogg*, 106 F.4th at 788 (holding in connection with Exemption 7(E) that "the foreseeable harm requirement requires the IRS to show how disclosure would foreseeably harm the IRS's interest in preventing circumvention of the law") (emphasis removed).  The FBI has not even tried to show that lifting the *Glomar **would*** interfere with enforcement proceedings.

Further, the FBI's declarations lack the particularity required to establish harm under FOIA.  Exemption 7(A) requires the agency to engage in a "focused analysis" that would not apply to just "any document in an open investigatory file."  *Campbell v. HHS*, 682 F.2d 256, 264 (D.C. Cir. 1982).  The foreseeable harm provision likewise requires the agency to focus on the specific

materials at issue in the case. *See Reps. Comm.*, 3 F.4th at 370 (holding FBI's foreseeable harm declaration inadequate because it failed to "specifically focus its foreseeable harm demonstration on the information at issue in the documents under review") (cleaned up); *Leopold*, 94 F.4th at 37-39 (rejecting agency's foreseeable harm declarations because they failed to account for contrary record evidence about the effects of disclosure).

Here, the FBI references possible coercion of witnesses, suppression or fabrication of evidence, and refusal to cooperate with the government. *See* Hammer Decl. ¶¶ 154, 161. But its statements could be transplanted without alteration into any Exemption 7(A) *Glomar* declaration, contrary to *Campbell*, *Reporters Committee*, and *Leopold*. And it does not concretely explain these alleged harms in the context of this case, including the massive publicity around the allegations and the passage of time since any possible crimes might have occurred. Thus, it has failed to show harm from disclosing the existence or nonexistence of a destruction or toilet flushing investigation. The *Glomar* response is invalid.

> ## B. The FBI fails to show that disclosing any responsive part of the Mar-a-Lago investigative file would interfere with enforcement proceedings.

The FBI has withheld all responsive documents in the Mar-a-Lago investigative file under Exemption 7(A). Leopold does not dispute that the file was compiled for law enforcement purposes or that it relates to a pending enforcement proceeding.[11] But the FBI has failed to show,

---

[11] There will, however, be no pending enforcement proceeding if the dismissal of Trump's indictment is upheld on appeal, or if Trump wins the election and orders DOJ to dismiss the case. That is significant because this prong is assessed at the time of the Court's decision rather than the agency's denial. *See Citizens for Resp. & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1097 (D.C. Cir. 2014) (holding that "Exemption 7(A) is temporal in nature" and that enforcement proceedings "must remain pending at the time of our decision, not only at the time of the initial FOIA request"). Leopold reserves the right to dispute the "pending enforcement proceeding" prong if events change and will promptly update the Court if they do.

as required by Exemption 7(A) and the foreseeable harm requirement, that disclosing any responsive and segregable part of the file will harm the ongoing investigation or prosecution.

The FBI has justified its withholding categorically.  Categorical justifications may be appropriate, but only if the agency defines its categories functionally, assigns documents to categories following a document-by-document review, and explains how the release of each category would harm enforcement proceedings.  *See Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986).  Categorical justifications are a tool used in litigation that permit agencies to explain their withholding of records without disclosing exempt information.  *See Prison Legal News v. Samuels*, 787 F.3d 1142, 1149 (D.C. Cir. 2015) ("A categorical approach to redactions or withholdings is permissible under FOIA when the FOIA litigation process threatens to reveal the very information the agency hopes to protect.") (cleaned up).  But an agency's decision to justify withholdings on a categorical basis does not alter its substantive duties under FOIA, including the duty to release all segregable information.  *See Inst. for Just. v. IRS*, 941 F.3d 567, 574 (D.C. Cir. 2019) (holding that agency engaged in categorical withholding "does not appear to have accounted for its obligation to disclose any reasonably segregable portion of a record") (cleaned up); *see also* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

Here the FBI has defined two categories of withheld information—"evidentiary/investigative" and "administrative"—and described some potential harms that could result from disclosing some information in those categories, such as tipping off potential subjects and revealing investigative priorities.  *See* Hammer Decl. ¶¶ 150-51.  Leopold does not dispute that disclosing ***some*** material could be exempt.  But the FBI has failed to show harm on a global basis, as it has not accounted for two critical facts about this case.

- 15 -

First, the FBI does not account for the fact that it has both indicted the main target of the investigation (Trump) and two of his associates (Nauta and de Oliveira), and provided them with copious amounts of discovery material. For instance, more than a year ago the Special Counsel had already produced "over 1.28 million pages of unclassified discovery and all of the CCTV footage obtained in the investigation," which the Special Counsel contended "goes far beyond" its discovery obligations. Government's Response in Opposition to Defendants' Motion to Compel Discovery, at 1, *U.S. v. Trump*, No. 23-cr-80101 (S.D. Fla. Apr. 22, 2024), ECF No. 470. Some of that information is almost certainly responsive to Leopold's request. Thus, to the extent knowing this information might have helped Trump and his associates "estimate the scope of the FBI's investigation," intimidate witnesses, and the like, they can do that already. Hammer Decl. ¶ 150. Telling them what they already know will have no cumulative effect.[12]

Second, the FBI also ignores the Special Counsel's many disclosures in public court filings without any attempt at sealing. This includes, for instance, photographs in the Indictment of boxes of presidential records taken at Mar-a-Lago, quotations of conversations involving the defendants, and interviews given to the FBI. *See* Indictment ¶¶ 25, 27, 28, 30, 31, 34, 39, 41, 42, 43, 44, 45, 47, 54, 55, 58, 65, 66, 69, 91, 95. It also includes several lightly redacted FD-302 interview forms describing various aspects of the Special Counsel's investigation, in addition to grand jury testimony. *See* Leopold Decl. Exs. 1-5.

The point is not (just) that the FBI has withheld public information. It is that the Special Counsel's public disclosure of substantial material from the investigative file refutes the argument that disclosing anything from the file would harm the investigation. After all, if the government

---

[12] The Special Counsel produced those documents subject to a protective order. But that would not prevent anyone with the information from using it unlawfully.

believed disclosing that information would cause harm, it could have moved to seal it.[13]  And it beggars belief that the sum total of releasable information happens to coextend with what the Special Counsel has filed on the public docket.

In sum, the investigative file might well contain material exempt under Exemption 7(A) whose disclosure would cause foreseeable harm.  But the FBI has failed to show that the investigative file contains no segregable information, and for that reason has not met its burden to establish the exemption or foreseeable harm from disclosing any segregable and responsive part of the file.  The Court should order it to produce a *Vaughn* Index and justify any withholdings on a document-by-document basis.

### C.    The FBI conducted an inadequate search by limiting its search terms to the main Trump investigative file.

To establish an adequate search, an agency must show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents."  *Am. Oversight v. HHS*, 101 F.4th 909, 923 (D.C. Cir. 2024) (cleaned up).  Meeting that burden requires the agency to search all records systems likely to contain responsive records.  *See Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (holding that an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested").  Here, Leopold does not contest most aspects of the FBI's search.  But one element was too narrow: its refusal to conduct a reference search of its Central Records System ("CRS").

---

[13]  Indeed, the Southern District of Florida was "disappointed" in the Special Counsel's inconsistency with respect to what it claimed necessary to seal.  The Special Counsel objected to the public disclosure of witness names and grand jury materials while also releasing such information in order to defend itself against charges of prosecutorial misconduct, but without explaining why the sealed material was necessary to rebut that charge.  *See* Order Directing Public Docketing of Outstanding Undocketed Pre-trial Motions and Resolving Related Motions at 4-5, *U.S. v. Trump*, No. 23-cr-80101 (S.D. Fla. May 19, 2024), ECF No. 552.

Leopold specifically requested that the FBI search "cross reference files from the CRS that mentions or refers to boxes of Presidential Records removed from the Trump White House that were stored at Mar-a-Lago."  Hammer Decl. Ex. A.  According to the FBI, there are two types of CRS index entries: "main" entries for the subject of an investigation, and "reference" entries for others associated with it.  Hammer Decl. ¶ 32.  Thus, by asking for a reference search, Leopold asked the FBI for files of people associated with the Mar-a-Lago investigation.

Despite this express request, the FBI only searched its "main" CRS indices for Mar-a-Lago-related records.  Hammer Decl. ¶ 36.  According to the agency, this search would only capture files of "the subject or focus of an investigation."  *Id.* ¶ 32.  Thus, contrary to *Oglesby*, the agency failed to search all records systems reasonably likely to contain responsive records—namely, the reference files likely to contain information on people associated with the investigation.  Neither has the FBI given any reason to believe that its "main" index search would have located all such records.  So the FBI has failed to show that its main index search was adequate.  The Court should order it to conduct a reference search.

## V.    CONCLUSION

The Court should grant summary judgment to Leopold and order the FBI to (1) lift its *Glomar* response, (2) justify its withholding of the investigative file on a document-by-document basis, and (3) conduct a new and adequate search.

Dated: October 23, 2024                    Respectfully submitted,

*/s/ Stephen Stich Match*
Matthew Topic, D.C. Bar No. IL0037
Stephen Stich Match, D.C. Bar No. MA0044
Merrick Wayne, D.C. Bar No. IL0058
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
Tel. (520) 488-0486
match@loevy.com
foia@loevy.com

*Attorneys for Plaintiff*

- 19 -